Mr. Jafari? Yes. Good morning. Good morning. Your Honor, may it please the Court, first of all, I'd like to start by saying that this is the first time I'm appearing before this Court, and I'm a little bit nervous, so I hope you can forgive me for that. Don't be nervous. You're welcome. Thank you. We look forward to hearing from you. Thank you. It's particularly an honor to appear before this Court at the nation's capital, which was home to me about 33 years ago when I came here as a foreign student and attended George Washington University. Your Honor, the trial court has declared the patent, the design patent in this case, to be invalid because it's functional. And then the trial court has continued to apply the ordinary observer test and has concluded that the patent was anticipated in view of the single prior art, the wheel, that was submitted in this Court. On the functionality aspect of this case, is it your view that the question of whether there are functional features in this patented structure or not is a matter of claim construction, or is it a fact question? It's certainly, the matter of functionality is certainly a question of law before the Court. The Court determines whether a design is functional or not. And we believe that… Well, how is one, how is a judge supposed to determine whether something's functional or not? Exactly. Without some testimony. Exactly. The question of functionality is a technical question. And we believe that it requires expert testimony. And earlier you were talking about… So that suggests that it's a question of fact. Well, facts are presented and the judge is to look at it and draw the conclusion whether as a matter of law the design is dictated by the function. But what the functions are, what the various functions are, the judge is not expected to understand that in different scenarios. So the expert witness can testify as to what the function is. And more importantly, Your Honor, the factors of functionality are whether there are alternative designs available, whether this is the best design available. The judge is not expected to know that. But an expert can testify as to whether, what are the other options. For example, in this case, they argued, the opposing counsel argued that the only way to attach this lip cover, this piece that goes on the lip of the wheel, was what the inventor testified, which was through the glue and the crimping on the side of the lips. Well, an expert could testify that that's not the only way to do it. You can, for example, use bolts to attach the piece to the wheel. Or there could be, whether this is the best design or not, and go through the analysis of the various options that are available in terms of implementing this design. So, and if I may say something with regards to rules of engagement, since Your Honor was talking about rules of engagement in the last case, we were, maybe we were naive, but we were expecting that when the trial court ordered that the parties produce their expert report, we were expecting the other side to tell us about their functionality argument, to tell us why their patent is functional. They did not do that. All they did is they provided a declaration, a two-page declaration, from one of the attorneys that works at the law firm. And there was not a word on functionality. So our expert did not get a chance to explain why this is not functional, why there are other designs, and so on. But when the inventor himself, Mr. Cato, provided testimony, which very clearly indicates that the design has functionality to it, you put it on and crimp it over kind of like a bottle cap. I mean, his testimony seemed pretty clear in light of the inventor's own admissions. Why did the district court err in failing to take in experts? I mean, you can pay experts to say anything on both sides. You've got the inventor of the patent virtually admitting it's functional. Your Honor, all the inventor was doing was, the inventor was talking about the commercial embodiment. And there's clear case law. This court itself has said that you cannot use the commercial embodiment to limit the scope of the patent. I agree, we do have case law that says that, but does the commercial embodiment differ in some fashion from the design patent? It does, it does. The design patent makes the wheel, presents the wheel in phantom lines. And in patent law, when, in design patent, when something is presented in phantom line, it's not claimed. It's not claimed. So you cannot use… But the J-hook, if you will, aspect of the design is not presented in phantom lines. It is. And the testimony is that that has a functional effect. No, Your Honor, this is the J-hook part. Yes. And it is, it's not, I'm sorry, did you say that it's not, that's correct. It's not presented in phantom lines. So that J-hook component in the design is part of the design. It is, it is. I don't have a problem with that. And you have the inventor testifying that that has a functional role. The inventor's testimony is extrinsic evidence to the patent, and it should only be considered if there is any ambiguity in the claims of the patent. There is no ambiguity in the claims of the patent. The J-hook is only one way to do this. There are other ways of doing, for example, the Antero wheel, the prior art wheel, does not have a J-hook. It goes to the edge of the lip of the wheel, and it stops right there. It doesn't have the J-hook shape. But even if there are other ways of doing it, the fact that the claimed way, the J-hook, has this functionality, why isn't that the end of the inquiry? Because it's not dictated by function. What you have to understand is that this design, this piece, is not necessary or is not required for the function of the wheel, which makes this case different than literally every other case that's been cited. Because in every other case, the piece is part of the design. It is required for the underlying piece to function. But this case, you remove this, and the wheel functions perfectly. In fact, according to them, it causes problems when you attach the piece to the wheel. It's like the fin and the odds-on case. And this court said in that case that it's not functional because if you remove the fin, this is the football case, if you remove the fin and the tail, you still have a ball that you can use. It's not required for the function. Same thing as here. There is another aspect of this design that intrigues me even more than the J-hook, and that is that there is a sweeping, continuous curvature aspect of this design. So the question I have is even if the J-hook is a functional aspect, there nonetheless remains this continuous curvature aspect. Correct. And it seems to me the evidence and the record is a little sparse on that. There is some testimony from the inventor about how the size is altered to fit the wheel. That suggests that that, too, has a functional aspect. But there is other testimony that suggests that the curvature is uniform, and it's always the same curvature even though there may be different sizes depending on the wheel. What can you tell me about the functionality or lack thereof of the curved portion? There is absolutely nothing functional about the curve. It's completely arbitrary, and it is picked by the designer of the design plan. It's depicted as such. You can remove it, and nothing is going to change. And it's completely arbitrary. But what about the testimony that it changes depending on the wheel, to fit the wheel? The inventor's testimony is extrinsic evidence. And this is the problem. This is why this court has said repeatedly that you cannot go to the inventor to get testimony regarding claim construction because you run into these situations where you restrict the claim of a design patent based on that. This court has said that if there is ambiguity, which there is no ambiguity here, if there is ambiguity, you first go to either the prior art or you go to the dictionary or those types of treatises because those are not biased. Those are more reliable. Then you get to an expert. Then you get to the inventor's testimony. It's several layers out. You did not present any expert testimony. Who did not present any? You. We did. It's the other side that didn't present. What the other side presented was this declaration of Mr. Hoover, which is a partner that works at the law firm that represented the defendant. We represented the expert report of Harold Walbrick. And the reason we did that is because we wanted him to take pictures of the wheel that was the prior art, of the wheel that was the accused wheel, and to tell the court what the differences were between the two designs in a visual fashion so that the court can decide whether an ordinary observer can distinguish between the two or not. Did he testify with regard to the ornamentality or functionality of that curved surface? Well, he did not get into functionality. Well, he testified, yes. He said that the only thing that he considered the ornamentality. To him, because we did not get any argument as to what the functionality was in their expert report, there was nothing for us to report. So you did not present any expert testimony on the functionality issue? We did not. We offered expert report on the ornamentality, on the functionality. We identified their own prior art, the lion patents, the 109 and the 205 patent, where the design was different, where the underlying surface of the wheel was different, different than the curvature of the lip cover. So, and again, the reason for that is this is very significant in terms of rules of engagement. This is very significant that when they were supposed to submit an expert report and tell us why the patent was invalid, this is the burden is on them. The patent is presumed valid. When they were supposed to do that, they did not say a word about functionality. When the motion for summary judgment was filed against you, did you ask the court for additional details? Discovery? No, we didn't ask for additional discovery time, but we told the court that the functionality argument should not be considered because they failed to offer evidence of functionality when they were supposed to, which was during the expert discovery period, and asked the court not to consider their functionality. But you didn't tell the court that you needed an opportunity to present testimony or obtain testimony or anything of that sort? No, we didn't feel that that was a proper procedure to follow because it was their burden. The patent is presumed valid. It was their burden to come up with evidence during expert discovery to show why the patent was invalid. And when they didn't submit that, we were justified in taking the position that they didn't think that the patent was invalid due to functionality. And we had, in our district, we have 28 days from the briefing to the hearing. It goes very quickly. And we had the trial that was supposed to be about a couple of months after that, and so we decided to ask the judge not to consider the functionality. We thought that was the right, proper way to go. All right. We've consumed most of your rebuttal time, but we'll give you your five minutes back if you need it. Let's hear from Mr. Martin. Thank you. May it please the Court, I have been here before, but I still get nervous. Well, we welcome you as well, so don't be nervous. I'd like to address first Judge Lynn's question, please, about the uniform curvature. Yes. I think my understanding of what you're referring to is the statement from Mr. Walbrink's expert testimony that there is uniform curvature. I think what he's referring to, excuse me if I may, we brought the wheel, the Antero wheel, and it's easy to, pictures are better than words in design patents, if I can show you what I mean. I think all he's saying is that the curvature is the same all around the particular device rather than having I don't know exactly what he was referring to, but I was referring to figure four of the patent and the broad curved portion, not the J-hook portion, but the rest of it, the broad curve depicted in figure four. Oh, I'm sorry. As it were, the profile of the The profile. The profile, okay. It's a hatch mark. No, I think that's just shadowing in there, not a hatch mark. Yeah, what we're saying about the profile is that it matches the wheel lip, and it has to for two reasons. One is that the optimum way of attaching the lip cover to the wheel, and this is according to Mr. Cato's testimony, is using both the crimping and an adhesive. Obviously, if you're going to have an effective adhesive, the more surface area that you have a purchase on, the better the seal is going to be. Wait a second. That has nothing to do with the curvature. Now we're talking about two things. By curvature, a sweep. If you look at the J, figure four in the patent. Yeah. And figure four in the patent has the lip shown in darker, and then the shadowing of the gentle curve. Figure four is the J profile? Figure four of the patent in suit. Of the patent in suit. Oh, yeah. Figure four of the patent in suit. Oh, yeah. We're talking about the same thing. Shows a sweeping curve that has no bend or discontinuity in it. It's a sweeping curve that presents a certain ornamental aspect to it. We are talking about the same thing. And the inventor testified that, talking about all the different shapes and all the different wheels that have to be fitted, he said, well, like I said before, all of our wheels we made with the same contour. That's the same contour. I understand he's talking about that smooth, curved surface. No. He's saying what we're referring to as the curvature is, hugs the, excuse me, you can see it here in figure two. You have the J hook and the curvature, and our point is that the curvature mirrors the curvature that you see in the phantom lines. Right. But that curvature, he says, is the same for all sizes. But he says, no, he says for adjustment to different sizes. He said it changes according to the diameter. I mean, that suggests to me that, you know, the size of this rim is going to change to meet the dimensions of the particular wheel that you're going to mount it on. But the curvature, the contour, is the same. No, he Which suggests to me that that's not a functional feature, but it's an ornamental feature. I think that's a misinterpretation of what he's saying. If I can get to Mr. Cato's. Well, of course, the decision was made on summary judgment that this was functional. So the question is, if there is some ambiguity, is that right? That's an excellent legal question because I think it's based on a matter of claim construction. We thought about this. Where does the summary judgment standard come in? If the court's functionality determination made as a matter of law leaves you with nothing that's. Of course, we have we have a decision, Ph.D. technologies that says whether a patented design is functional or ornamental is a question of fact. Well, that's exactly. Maybe a little hard to clear that with statements in other cases that claim construction is in a design patent is or functionality in a design patent is a question of claim construction. Right. And I we did not find any case law that answered that question. We straddled it. We treated it as a motion for summary judgment, but made the point that which the judge, I think, correctly said it was a matter of claim construction. Now, there's a magic moment there at a point when the court has done with the claim construction and it's the aha moment. There's nothing left. I don't know the answer to that question. I think the answer has to be that it's a question of law because it makes no sense otherwise. But we're not free to disregard Judge Prost's 2006 opinion. Yeah. It preceded the opinions that say it's a question of claim construction. Yeah, I understand. And I don't know how you resolve it. Do you have a jury come in? The court instructs the jury on what's functional and what isn't. And you have, I suppose, a motion if the jury comes out the wrong way that the evidence goes the other way. Why would the court be instructing the jury on what's functional? You mean in general what the law of functionality is there to apply? No. Because functionality is a question of fact. Therefore, it must be decided by a fact finder. If they exercise their Seventh Amendment right and requested a jury, then the jury has to decide this question. Unless it can be decided as a matter of law because it's so clear no reasonable jury can conclude otherwise. Well, if you look at Egyptian goddess, there's a problematic section there where the court says you have to say something about functionality, and it's enough just to say the ornamental elements of the design are what's protected, and we don't have to have a formal claim construction hearing. In saying that, there's a phrase where the court says, of course, the judge may instruct the jury on functionality, and it doesn't say more than that, whether the judge is giving guidelines or the judge is saying A, B, and C are functional, D, E, and F are ornamental. But then it quotes odds on favorably, I think, quotes odds on for the proposition that functionality is for the separation of the claim construction. Yes. Yeah. So it's a, I know the entire panel couldn't have meant to. Well, that's an in-bank case, right? Yes. Yeah. It's a puzzle. I don't think it's been resolved. Maybe it resolved the case that Judge Lynn was referring to, Ph.D. technology. Well, that may be the answer. The court decides what's functional without saying this is everything to the jury. So your point, if I understand it, if you're adopting Judge Clevenger's suggestion, is that Egyptian goddess overruled Ph.D. technologies. It expressly overturned the prior court holding that that was a matter of fact. I'd be hesitant to say it expressly turned it. But it's too sweeping an opinion to, I think, get down to that because it was really dealing with. But the two are in conflict. Yes. One would think that an in-bank decision would have more weight than a panel decision. I think so. Can you help me out a little bit, sir? There was a sentence in the district court's opinion that I found puzzling. I'm going to read it to you. It's under the heading of functionality. I'm sorry the opinion isn't paginated. I do have a paginated version, and the pages line up. And the sentence reads, the court finds and the plaintiff admits that the 369 patent contains both functional and non-functional elements. What are the non-functional elements that the court found? She didn't find any. I was hoping this question came up because that paragraph doesn't square with the rest of the opinion on functionality. That's why I brought it up. I have two theories. You're the one that's defending her judgment on functionality. I'm not defending that paragraph. I think what she's saying, I think what she's, there's two theories. One is that she started to write the opinion one way and then the aha moment came through and she went the other way. Well, that suggests that maybe summary judgment wasn't appropriate. Oh, I think you will not find a better analysis of functionality when you get beyond that. I think what she may have been saying is that plaintiff, really that the emphasis is on the plaintiff admits that the patent contains both functional and non-functional element. The court finds, the phrase the court finds that immediately precedes that would be inconsistent with the outcome of the rest of the opinion. I think the internal inconsistency between that paragraph and the rest of the opinion on functionality is. The court certainly thought that Egyptian goddess taught her what she had to do. Because the sentence that I pointed to, the ones followed by it, says pursuant to Egyptian goddess, I, the court, not the fact finder, must construe the corporate claim to identify the non-functional. And I think after that she did beautifully because then she, in the paragraph you point to, it's a generality. She's not talking about what the elements of the patent are and I think she does just fine after that because she nails down both on the curvature issue, certainly on the J book issue. Might your argument be that regardless of whether she thought there might be some non-functional elements, it's quite clear from her opinion that the J book and the curvature are not them and that's the only thing being argued in this case. So we don't really need to concern ourselves with her statement that there may exist non-functional elements because it's not the ones before this court. I think that's a benign inference, yes. Yeah, but we can't tell what she was thinking but I think that's right because it's so clear in how thorough the rest of the opinion is. From time to time this court issues opinions that have parada or have mistakes or have things in them and the parties file a piece of paper with us and alert us and we correct our mistakes or our errors. That's apparently not a common practice with practitioners in front of district court judges. She hands you this opinion, right? And before the other side even has a chance to file a notice of appeal, somebody could have walked into the judge's law clerk and said, what's happening here? The thought occurred to me as a practicing litigator, be careful what you ask for. I think that's probably the problem. But we're reviewing de novo so what she thought may not matter. A substantial part of your adversary's argument was that the judge couldn't, the judge got from zero to the conclusion of functionality and your adversary said you can't do it without an expert witness. You didn't put an expert witness on. We did, we put on the inventor who was an expert. His deposition. If we sat down to and retained an expert to testify, we couldn't have done better than Mr. Cato's testimony. In fact, Mr. Cato, if you read through it, it's like 30 pages that we've cited. You get the feeling that he thought he invented a utility patent. But he wasn't put on as an expert. He was put on as a fact witness. No, but he was in fact somebody who was qualified to testify to what he testified to. He didn't give the fact witness. Yes. And then the question is even if he were called to testify as an expert, isn't there a requirement somewhere along the line that you determine who the ordinary observer is in order to place whatever expert testimony you're about to elicit in the proper context? In terms, yeah, when we get to the anticipation issue, yes. And by default, I think the judge was sensitive and she talks about the ordinary observer test. She didn't get around to saying who she identified as the ordinary observer. But she went, she used a fair amount of verbiage to say that she was looking at the Antero wheel and the patent from the point of view of the ordinary observer. Does the ordinary observer standard have any role to play in this determination of functionality in the context of interpreting claims scope? I mean, this is the gift that keeps on giving here, this question. It gets more and more involved and convoluted every minute. From the procedural standpoint, I think, I don't think ordinary observer comes into play. I think you might make a stronger case for a person of ordinary skill in the art, as a matter of fact. Somebody who understands the prior art. So it may be simply a question of whether there is a functional aspect. Right. The ornamentality and whatever ornamental sense the design presents to an ordinary observer is a secondary question. The primary question is, is it dictated primarily by functional character? And I don't, I strongly don't believe that ordinary observer comes into that at all. What was the rope case? Levy, Dayton, Hudson. You can look at a piece of rope and say that's attractive to the ordinary observer or distinguish between them. But you might need an expert to say twisting the strands is functional. Anything else? All right. Thank you very much. Thank you, Mark. Thank you. Mr. Chaparro. I think from your questioning it's become clear why this case was not properly decided on summary judgment. The inventor's testimony is what's ambiguous. And you cannot rely on an inventor's testimony in a case like this to satisfy the clear and convincing evidence. That's the standard that you need in order to invalidate the patent in this process. It's important to point out that the purpose of this device was to ornament the wheel. There was absolutely no functionality. Remove the lip cover and the wheel will continue to roll. It is not required for that purpose. It's not the purpose of it. The purpose was ornamentality. It was setting odds on that that's what you look at. What was the purpose? Was the purpose to ornament, to decorate? Yes, it was. And what did it accomplish? It accomplished making the wheel look more attractive, look like a more expensive wheel, which is exactly the purpose of design patent law. And that's why this patent is valid and, in our opinion, it should be held valid on summary judgment. The court did not address infringement, but the opposing counsel did not even address infringement because the two, the accused wheel and the patent are basically the same. The differences are between the prior art. And I thank you for your time. All right. Thank you very much. And the case is submitted.